UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY SCOTT PETERSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) Civil Action No. 25-CV-10071-AK <br> v. ) <br> ) <br> DAMIEN NICHOLS, CHARLES ) <br> PATRICK CLERKIN, JOHN DOES 1-25, ) <br> and RED AND BLACK ENTITIES ) <br> 1-25 ) <br> ) <br> Defendants. ) <br> ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS CLERKIN AND NICHOLS' JOINT MOTION TO DISMISS

**KELLEY, D.J.**

Plaintiff Jeffrey Peterson filed this action against 52 defendants—Damien Nichols, Charles Patrick Clerkin, and 50 unidentified individuals and entities—with whom he collaborated on the "Make America Healthy Again" ("MAHA") token cryptocurrency. He brings six counts against all Defendants: (1) Violation of Section 10(b) of the Exchange Act and Rule 10b-5; (2) civil conspiracy; (3) defamation; (4) tortious interference with business relationships; (5) unfair and deceptive trade practices under M.G.L. c. 93A, § 11; and (6) unjust enrichment. The two named Defendants in this action, Nichols (the person who brought Peterson onto the MAHA token project) and Clerkin (the organizer of the token project) filed a Motion to Dismiss [Dkt. 25], which Peterson opposes. [Dkt. 28]. Nichols and Clerkin argue that Count I fails to state a claim, and by extension, the Court lacks supplemental jurisdiction to

1

adjudicate Peterson's state law claims.  For the reasons stated below, Clerkin and Nichols' Motion to Dismiss is **GRANTED**.

I.      BACKGROUND

The following facts are drawn from the Amended Complaint. [Dkt. 22].

Plaintiff Jeffrey Peterson is a software engineer with experience in social networking technology development and cryptocurrency. [Id. ¶ 20].  In November 2024, co-Defendant Damien Nichols asked Peterson to work on a cryptocurrency token connected to the MAHA campaign championed by the Secretary of Health and Human Services, Robert F. Kennedy, Jr. [Id. ¶¶ 35-36].

While based in the same blockchain as more commonly known and widely adopted cryptocurrencies, this cryptocurrency token (referred to as the "MAHA token") is a "meme coin," making it "highly illiquid" and "primarily a vehicle for speculative trading." [Dkt. 22 at 7 n.2].  The co-Defendants promoted the MAHA token through Club MAHA, "an unincorporated association of token promoters and developers." [Id. ¶ 25].  Peterson worked on Club MAHA's website from late November 2024 through early January 2025 as a technical contributor and "was not involved in management decisions or planning." [Id. ¶¶ 39-40, 56].

Club MAHA and the MAHA token project are not affiliated with Secretary Kennedy's campaign, operating "primarily as a grassroots initiative by private individuals who were supporters of Robert Kennedy Jr.'s political aspirations, rather than as an officially sanctioned or authorized campaign operation." [Id. ¶¶ 36-38, 66-68].  Despite the lack of affiliation, Nichols originally represented the MAHA token to Peterson as formally associated with the Secretary. [Id. ¶ 36].  According to Peterson, he purchased MAHA tokens because of that assumed connection; he also received MAHA tokens "[i]n recognition of his technical contributions" and

2

in exchange for his "time, expertise, and resources" in working on the Club MAHA website and the MAHA token. [Id. ¶¶ 41, 95-96].

During his time with Club MAHA, Peterson states that he was repeatedly undermined and mistreated by several unidentified MAHA token Defendants. [Id. ¶¶ 52, 62-63, 69, 72, 82-93]. Specifically, he believes that the MAHA token Defendants were coordinating a campaign to blame him for the MAHA token's challenges, damaging his professional reputation and his political relationships. [Id. ¶¶ 62, 69, 88, 92]. He also states that Nichols was "inconsistent" in his responses to Peterson's contributions, "referencing [the work's] complexity while suggesting the work was progressing too slowly." [Id. ¶¶ 77-79]. Peterson "believes he has experienced damage to his professional reputation" due to the Defendants' behavior and "suffered economic loss" based on the MAHA token's devaluation. [Id. ¶¶ 95, 101]. He directs no specific behavior towards co-Defendant Clerkin.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A "court may not disregard properly [pleaded] factual allegations even if . . . actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotation marks omitted).

3

Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

Complaints brought by pro se litigants, as is the case with this action, are subjected to lesser scrutiny than complaints drafted by attorneys. Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).  Courts may "intuit the correct cause of action, even if [the complaint] was imperfectly pled," provided the complaint contains sufficient facts to do so. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  However, while pro se litigants are afforded more latitude in this realm, this latitude "cannot be taken to mean that pro se complaints are held to no standard at all." Sergentakis v. Channell, 272 F. Supp. 3d 221, 224-25 (D. Mass. 2017) (internal quotation marks omitted).  In other words, "pro se status does not insulate a party from complying with procedural and substantive law." Ahmed, 118 F.3d at 890.

### III.   DISCUSSION

#### A.   Failure to State a Claim as to Count I

In Count I of his Amended Complaint, Peterson claims that the Defendants' actions are in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5.  Section 10(b) (codified at 15 U.S.C. § 78j) is the main anti-fraud provision of the Exchange Act, enforced through Rule 10b-5. Under Rule 10b-5, it is unlawful

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

>   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
>   ***in connection with the purchase or sale of any security.***

17 C.F.R. § 240.10b-5 (emphasis added); see also S.E.C. v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010). To successfully make a Section 10(b) claim, a plaintiff must plead six elements: "(1) a material misrepresentation or omission; (2) scienter [(legal speak for knowledge)]; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." Ponsa-Rabell v. Santander Sec. LLC, 35 F.4th 26, 32 (1st Cir. 2022) (quoting In re Biogen Inc. Sec. Litig., 857 F.3d 34, 41 (1st Cir. 2017)); see also 15 U.S.C. § 78u-4(b); In re Karyopharm Therapeutics Inc., Sec. Litig., 552 F. Supp. 3d 77, 85 (D. Mass. 2021).

Generally, as an initial matter, courts must determine if the investment at issue—here, the MAHA token—qualifies as a security under federal securities law. Per the SEC's Staff Statement on Meme Coins, issued on February 27, 2025, the Division does not generally consider meme coin transactions as "the offer and sale of securities," U.S. Sec. & Exch. Comm'n, Staff Statement on Meme Coins (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins (last updated May 5, 2025) [hereinafter Staff Statement on Meme Coins], but any individual meme coin must still be analyzed under the test set out in S.E.C. v. W.J. Howey Co. to determine whether it is a security. 328 U.S. 293 (1946); Staff Statement on Meme Coins, at n.4. To date, the Court has been unable to find any persuasive or controlling authority analyzing if certain meme coins are, in fact, securities. With that in mind, the Court finds an analysis of the MAHA token's status as a security unnecessary here, as Peterson has otherwise failed to state a claim.

Assuming *arguendo* that the MAHA token is a security, Peterson's Amended Complaint does not attribute any specific actions or actionable misrepresentation to Nichols, Clerkin, or any

5

of the unidentified Defendants, and thus fails to provide factual allegations from which a reasonable inference could be made that any of the Defendants violated the Exchange Act.

Peterson's claims are not set forth in a fashion that would permit any of the named Defendants to file a meaningful response to the Complaint. "[I]n any [] action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why . . . . [T]he requirements . . . are minimal—but 'minimal requirements are not tantamount to nonexistent requirements.'" Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)); Drury v. JF White Contracting Corp., No. 06-CV-40027-FDS, 2006 WL 8458670, at *2 (D. Mass. Feb. 17, 2006). "Where a complaint omits any reference to individual defendants, no such notice is provided." Aldabe v. Cornell Univ., 296 F. Supp. 3d 367, 376 (D. Mass. 2017), aff'd, No. 17-2180, 2018 WL 7917918 (1st Cir. Dec. 7, 2018)

By pleading in this manner—i.e., collectively asserting his claims against the Defendants—Peterson has failed to meet the pleading requirements for proceeding in this Court. See Bagheri v. Galligan, 160 Fed. Appx. 4, 2005 WL 3536555, at *1 (1st Cir. Dec. 28, 2005) (affirming dismissal of the complaint because, among other things, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts). It would be unduly burdensome for the Defendants to identify the grounds, if any exist, upon which the claim is based.

At most, Peterson claims that Nichols stated the MAHA token was connected to Secretary Kennedy's campaign to bring Peterson onto the MAHA token project as a collaborator, but this generic statement, intended to entice Peterson to join Club MAHA and work on the MAHA token, is not connected to the purchase or sale of a security, as required to evidence a

violation of Rule 10b-5. See 17 C.F.R. § 240.10b-5; Zhou v. Desktop Metal, Inc., 120 F.4th 278, 287 (1st Cir. 2024) (holding that a section 10(b) and Rule 10b-5 "complaint must allege . . . a *connection with the purchase or sale of a security*[, among other elements] . . . . The district court was bound to dismiss [the] complaint if [the plaintiff] failed to allege any one of the[] elements" (emphasis added)); [Dkt. 22 ¶ 38 ("This distinction between a formal campaign affiliation versus an independent supporter-led initiative represented a material difference from what Peterson understood when initially agreeing to *provide his technical expertise to the project*." (emphasis added))]. Moreover, Peterson fails to make any other identifiable claims of misrepresentation, including against the 50 unidentified MAHA token Defendants.

Additionally, while plaintiffs are allowed to bring suit against unnamed parties where "a good-faith investigation has failed to reveal the identity of the relevant defendant," there must be a reasonable likelihood that discovery will yield that information. Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007). Here, Peterson has not conducted a sufficient good-faith investigation nor does there appear to be a reasonable likelihood that discovery will yield information. To the former, Peterson's Amended Complaint states that "[m]ultiple team members approached Peterson with concerning information about internal discussions and planned actions that potentially threatened both the project's viability and Peterson's professional standing." [Dkt. 22 ¶ 62]. He continued, "[m]ultiple project team members informed Peterson that the MAHA token Defendants apparently had no formal association with Robert Kennedy's official political campaign, its related initiatives, or any specific arrangement for ongoing funding or support from RFK Jr.'s official organizations. This information appeared inconsistent with the representations made by Nichols and other MAHA token Defendants when initially discussing Peterson's participation and technical services. Furthermore, Peterson learned

that certain MAHA token Defendants had begun attributing responsibility to him for various challenges facing the project." [Id. ¶¶ 67-69].  Peterson claims to have spoken to several individuals, yet fails to identify who they are, their roles, or who they were talking about.  He also claims the information he learned was "inconsistent with the representations made by Nichols and *other MAHA token Defendants*" without identifying who the other MAHA token Defendants are.  At the very least, Peterson should have been able to identify the categories or roles of those he claims are unidentified Defendants.

To the reasonable likelihood that discovery would yield the information he seeks, Peterson would need to identify 50 individual defendants and clarify their "specific roles, responsibilities, and knowledge," which he has already failed to do as to the named Defendants. [Dkt. 28 at 15].  To this end, Peterson states that he would need discovery to uncover internal communications that he believes would confirm the misrepresentations he claims. [Id. at 14]. However, the Court cannot identify any other alleged misrepresentations in the Amended Complaint.  Together, this means that Peterson currently knows of no specific, unlawful actions or any specific actors; instead, there are only conclusory assumptions, without any identified misrepresentation or any indication from whom he would learn additional information, which are insufficient to survive a motion under 12(b)(6).  As a result, "the Court concludes that Plaintiff cannot maintain an action . . . based on unpled, unspecified actions of unserved and unidentified John Doe Defendants; doing so would turn the pleading standard on its head." Richardson v. City of Providence by & Through Lombardi, No. 18-CV-253, 2018 WL 5619719, at *3 (D.R.I. Oct. 30, 2018).  Plaintiff is requesting to survive for another day to conduct a court-sanctioned fishing expedition to identify "certain team members engaged in discussions contemplating

actions against Peterson that might serve to explain strategic challenges to stakeholders." [Dkt. 22 ¶ 84]. That is an expedition the Court does not allow.

Thus, even reading his Amended Complaint as liberally as possible, as is the standard for pro se plaintiffs, and assuming all facts as true, there are insufficient facts to infer that Nichols and Clerkin, or any of the other Defendants, violated the Exchange Act, even if the MAHA token was considered a security. Therefore, Nichols and Clerkin's Motion to Dismiss as to Count I is **GRANTED**.

        **B.**      **SUPPLEMENTAL JURISDICTION**

While Count I of Peterson's Amended Complaint relies on federal securities law, triggering federal question jurisdiction, Counts II through VI are state law claims that rely on the Court's exercise of supplemental jurisdiction. The Court can assert supplemental jurisdiction over state claims "so related" that they form the same case or controversy as the plaintiff's federal claims. 28 U.S.C. §1367(a). However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," and thus, "if the federal claims are dismissed before trial[,] . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Thus, as the only federal claim is dismissed long before trial—in fact, even before the start of discovery—the Court will decline to exercise supplemental jurisdiction. Peterson is free to refile these claims in Massachusetts state court.

        **C.**      **DIVERSITY JURISDICTION**

On a final note, although not included in the Amended Complaint, Peterson seemingly claimed federal Court jurisdiction based on full diversity between the parties in his original Complaint. See 28 U.S.C. § 1332. For the sake of finality, diversity jurisdiction similarly does

not exist here. "United States citizens who are domiciled abroad are citizens of no state; their stateless status destroys complete diversity under § 1332(a)(3), and their United States citizenship destroys complete diversity under § 1332(a)(2)." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126 (1st Cir. 2011) (citation modified); see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989). Because Peterson is an American citizen living in Toronto, Canada [Dkt. 22 ¶ 9], he is unable to claim diversity jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Clerkin and Nichols' Motion to Dismiss [Dkt. 25] is **GRANTED**.

**SO ORDERED.**

Dated: March 13, 2026                               /s/ Angel Kelley
                                                    Hon. Angel Kelley
                                                    United States District Judge